FILED
United States Court of Appeals
Tenth Circuit

**July 22, 2011**

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

DONALD P. KILINSKI, on behalf of
Rosemary A. Kilinski (Deceased),

      Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner
of Social Security,

      Defendant-Appellee.

No. 10-1540
(D.C. No. 1:09-CV-00716-CMA)
(D. Colo.)

---

ORDER AND JUDGMENT[*]

---

Before **HOLMES** and **ANDERSON**, Circuit Judges, **BRORBY**, Senior Circuit
Judge.

---

Rosemary A. Kilinski sought social security disability benefits commencing

December 1, 1999.[1]  The Commissioner determined that she was disabled as of

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel.  It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1]    Ms. Kilinski died in 2009 and her husband Donald P. Kilinski was
substituted as plaintiff, pursuant to 42 U.S.C. § 404(d)(1).  We nevertheless refer
to Ms. Kilinski because she was the claimant in the administrative proceedings.

October 1, 2003.  She now appeals the district court's judgment upholding the

Commissioner's determination that her disability onset date was October 1, 2003,

rather than December 1, 1999.  We exercise jurisdiction under 28 U.S.C. § 1291

and 42 U.S.C. § 405(g).  Because we conclude that the Administrative Law Judge

(ALJ) erred in assessing Ms. Kilinski's residual functional capacity (RFC), we

remand for further proceedings.[2]

## I.  Background

Ms. Kilinski asserted disability beginning December 1, 1999, at the age of

57, due to ovarian and liver cancer, fatigue, inability to concentrate, thumb pain,

knee pain, and musculoskeletal pain.  In late 1999, she had surgery for ovarian

cancer followed by chemotherapy from mid-January through mid-May, 2000.

Aplt. App. Vol. I at 118-19, 199, 205.  During chemotherapy, Ms. Kilinski

suffered from fatigue, anemia, nausea, leg and arm pain, aching joints, depression,

and migraine headaches.  *Id.* at 193, 200; *id.* Vol. II at 314, 318, 322, 329.

Following chemotherapy, Ms. Kilinski reported fatigue and joint aches, but had a

good energy level and had regained most of her strength.  *Id.* Vol. II at 247, 306,

308, 312.  In September 2000, she began reporting depressive symptoms, but

declined antidepressant medication at that time.  *Id.* Vol. I at 193.

---

[2]     Ms. Kilinski's application was filed October 24, 2003.  The Social Security
Act allows retroactive disability benefits for a period of up to one year prior to
the date of application.  *See* 42 U.S.C. § 423(b).

In November 2000, Dr. Blevins examined Ms. Kilinski due to her complaints of pain in her knees, elbow, and left thumb. *Id.* at 142-43. X-rays revealed significant arthritis in the thumb and mild osteoarthritis in the knees. *Id.*

From February to May 2001, Ms. Kilinski was walking regularly and exercising at a gym. *Id.* at 182, 184. In late August 2001, she reported increased fatigue, shortness of breath on exertion, increased left wrist pain, and depression. *Id.* Vol. II at 288. In September 2001, her physician again recommended an antidepressant. *Id.* Vol. I at 181. In April 2002, she began taking an antidepressant, which improved her depressive symptoms. *Id.* at 165, 169. From August to November 2002, she was examined for neck and shoulder pain. *Id.* at 160; *id.* Vol. II at 397-98. An appointment with her oncologist on February 21, 2003, showed a normal exam, *id.* Vol. II at 265-66, and on August 19, 2003, her treating physician noted that her depression was well-controlled by the antidepressant, *id.* Vol. I at 156. In October 2003, however, she was diagnosed with recurrent ovarian cancer. *Id.* Vol. II at 260.

In June 2001, Ms. Kilinski attempted to return to work. Her first work attempt was a part-time job from June 2001 until April 2002, one to three days per week, about fourteen hours per week. Although she was hired to do sales work and promotions, due to her fatigue and inability to concentrate, she did only copying and filing. She next worked in the fall of 2002 for less than one month as a temporary secretary-receptionist. Her final work attempt was as a "demo

lady" where she handed out products for four to six hours, twice a month for five months in 2003.

In the administrative proceedings, Ms. Kilinski's application for disability benefits was granted initially for disability beginning October 1, 2003. She sought further agency review on her claim of disability since December 1, 1999, and was granted a hearing before an ALJ. At the hearing, she and her husband testified, as did a vocational expert (VE). The ALJ determined that Ms. Kilinski was not disabled before October 1, 2003, finding at step four of the five-step sequential evaluation process, *see Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (describing five steps), that she had the RFC to return to her past relevant work as a technical writer. The Appeals Council denied review, thus making the ALJ's determination the final decision of the Commissioner. The district court affirmed.

On appeal, Ms. Kilinski argues that the ALJ erred (1) in assessing her RFC, (2) in rejecting the opinion of her treating physician, (3) and in failing to properly evaluate her subjective complaints and credibility in determining her RFC.

## II.  Analysis

### A.  Standards of Review

We review the Commissioner's decision to ascertain whether it is supported by substantial evidence in the record and to evaluate whether he applied the correct legal standards. *Oldham v. Astrue*, 509 F.3d 1254, 1256 (10th Cir. 2007).

"Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (internal quotation marks omitted). To determine whether substantial evidence supports the Commissioner's decision, we examine the record as a whole, but we do not reweigh the evidence. *Id.*

In this context, "disability" requires both "an inability to engage in any substantial gainful activity" and "a physical or mental impairment, which provides reason for the inability." *Barnhart v. Walton*, 535 U.S. 212, 217 (2002) (internal quotation marks omitted). The impairment must be a "'medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . .'" *Fischer-Ross*, 431 F.3d at 731 (quoting 42 U.S.C. § 423(d)(1)(A)).

## B.  RFC Determination

At step four, the ALJ was required to evaluate Ms. Kilinski's physical and mental RFC. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). RFC represents "the most [that the claimant] can still do despite [her] limitations," 20 C.F.R. § 404.1545(a)(1), and must include "all of [the claimant's] medically determinable impairments," *id.* § 404.1545(a)(2). The ALJ assigned Ms. Kilinski an RFC within the sedentary exertional level, finding that she could lift up to ten

pounds, frequently sit, occasionally stand and walk, and push and pull "within the exertional range specified." Aplt. App. Vol. I at 19.

**(i) Left thumb pain**

For her first challenge to the ALJ's RFC determination, Ms. Kilinski asserts that the ALJ erred in evaluating her left thumb pain. She testified that she could use a computer for only one hour before her thumb pain required her to stop. The VE testified that Ms. Kilinski's past jobs required "pretty extensive keyboarding," so if a person could use a computer only one hour a day, she could not do those jobs. *Id.* Vol. II at 531.

The ALJ stated that diagnostic studies of Ms. Kilinski's thumb ordered by Dr. Blevins in November of 2000 "were normal." *Id.* Vol. I at 17. In fact, the x-ray of the left thumb showed significant joint arthritis, examination demonstrated "fairly significant tenderness," and a hand-based splint was prescribed. *Id.* at 142-43. Moreover, Ms. Kilinski's medical records established that she experienced pain in her thumb since approximately 1995. *See id.* at 144.

The Commissioner argues that the ALJ's error in evaluating Ms. Kilinski's thumb pain was harmless because she had worked at jobs requiring computer keyboarding since 1995 and had reported to Dr. Blevins that her pain had increased only slightly between 1995 and 2000. Therefore, according to the Commissioner, Ms. Kilinski's thumb pain would not have prevented her from working as a

technical writer between December 1, 1999 and October 1, 2003. The district court adopted this reasoning to hold that the ALJ's error was harmless.

"The [district court's] (and appellee's) post hoc rationale is improper because it usurps the agency's function of weighing and balancing the evidence in the first instance." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008). "[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007). We may apply harmless error "in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

The error is not harmless because if the ALJ had recognized the objective medical evidence showing significant joint arthritis and the physician's notation of fairly significant tenderness and a prescription for a hand-based splint, he may have found credible Ms. Kilinski's testimony that she could not use a keyboard for more than an hour a day. Indeed, if the ALJ had properly analyzed the evidence concerning Ms. Kilinski's thumb pain, he might have concluded that she was unable to do her past work as a technical writer. Accordingly, we must remand this issue for further findings.

**(ii) Findings and evidence to support RFC**

Ms. Kilinski also finds fault with the RFC assessment because (1) the ALJ failed to include an evaluation of manipulative functions; (2) the record does not support the RFC findings for sitting, walking, or pushing and pulling; and (3) the RFC assessment is not supported by substantial evidence.

We agree that the ALJ erred in failing to assess Ms. Kilinski's manipulative functioning in light of the objective medical evidence showing arthritis in the left thumb, Ms. Kilinski's testimony that she could work at a keyboard only one hour a day, and the VE's testimony that her past jobs, except the job as trainer, required extensive keyboarding. *See* 20 C.F.R. §404.1545(b) (including manipulative ability in types of physical demands that may reduce a claimant's ability to do past work). On remand, the ALJ should include in his RFC assessment Ms. Kilinski's manipulative functioning.

The ALJ determined that Ms. Kilinski could do sedentary work, including its sitting, walking, and pushing/pulling demands. The ALJ stated that these assessments were based on "the entire clinical record," Aplt. App. Vol. I at 19, but did not indicate which part of the record supported his assessment. The ALJ incorporated in the RFC assessment Ms. Kilinski's testimony of her abilities to stand and lift. Although the ALJ discussed the medical evidence earlier in his decision, he did not point to any evidence of Ms. Kilinski's abilities to sit, walk, or push/pull. "It is well settled that administrative agencies must give reasons for their

-8-

decisions." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation marks and brackets omitted). Therefore, on remand, the ALJ should also clarify his reasons for the RFC findings regarding Ms. Kilinski's abilities to sit, walk, and push/pull.

The ALJ's conclusion that Ms. Kilinski could do sedentary work was based on the following findings: her 1999-2000 cancer treatment "restored significant function in a short period of time"; she was able to exercise and walk her large dog; she was "known to be . . . high functioning, intelligent and competent" and quickly overcame the adverse effects of her cancer treatment; "she did not consider herself precluded from all work activity," as evidenced by her attempts to work; and the fact that she could not sustain her work attempts at the light level did not preclude a finding that she could do sedentary work. Aplt. App. Vol. I at 19.

The record contains substantial evidence to support the ALJ's finding that Ms. Kilinski's cancer treatment restored significant function. However, at step two, the ALJ also found "it reasonable that the claimant had a loss of exertional strength and some fatigue flowing from her treatment [from] December 1999 through September 2003." *Id.* at 18. The ALJ failed to evaluate the effects of fatigue and loss of exertional strength on Ms. Kilinski's RFC. On remand, the ALJ should perform this evaluation. *See Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010) (stating ALJ must consider limiting effects of all impairments, even those found not disabling at step two).

Furthermore, the ALJ's finding that Ms. Kilinski did not sustain her attempts at light work is not evidence that she could do sedentary work, particularly because the ALJ did not discuss her work attempts. *See* 20 C.F.R. §404.1574(a)(1) (stating work that a claimant was "forced to stop or to reduce below the substantial gainful activity level after a short time because of [her] impairment" is considered "an unsuccessful work attempt"); Social Security Ruling 96-8p, 1996 WL 374184, at *5 (stating RFC assessment must be based on all relevant evidence, including "[e]vidence from attempts to work").[3] Ms. Kilinski testified that she had been required to abandon her work attempts due to fatigue, inability to concentrate, and pain. As noted above, the ALJ failed to incorporate in his RFC assessment his finding that Ms. Kilinski had a loss of exertional strength and some fatigue. In addition, the ALJ made no findings on whether she would be able to sustain work-like activities for eight hours a day, five days a week, or an equivalent work schedule. *See Haga*, 482 F.3d at 1208 (reversing because evidence did not show that claimant had the RFC to work "8 hours a day, for 5 days a week, or an equivalent work schedule") (quoting SSR 96-8p, 1996 WL 374184, at *2)). He also did not decide if she could hold a job for a significant period of time in light of her impairments. *See Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994) ("A finding that a claimant is able to engage in substantial gainful activity requires more

_____

[3] "Social Security Rulings are binding on the ALJ." *Hayden v. Barnhart*, 374 F.3d 986, 992 n.9 (10th Cir. 2004) (citing 20 C.F.R. § 402.35(b)).

than a simple determination that the claimant can find employment and that [she] can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job [she] finds for a significant period of time." (internal quotation marks omitted)). And the ALJ's view that Ms. Kilinski did not consider herself disabled because she made three brief work attempts is belied by the evidence, including her testimony, that she was unable to sustain work.

Moreover, Ms. Kilinski's ability to exercise and walk her large dog does not establish her ability to perform substantial gainful activity. *Cf. Krauser v. Astrue*, 638 F.3d 1324, 1333 (10th Cir. 2011) ("[S]poradic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity."); *Haga*, 482 F.3d at 1208 (claimant's ability to work two to six hours per day as caretaker for her mother did not show she could hold a job). Accordingly, on remand the ALJ should address these deficiencies in the RFC assessment.[4]

**(iii) Failure to compare RFC to requirements of past work**

Ms. Kilinski further argues that substantial evidence does not support the ALJ's conclusion that she could perform her past work as a technical writer. After

---

[4] The ALJ's remark that Ms. Kilinski was "known to be . . . high functioning, intelligent and competent," Aplt. App. Vol. I at 19, is not evidence of her ability to work. The remark was drawn from Dr. Davidson's report, *id.* Vol. II at 424, which the ALJ afforded no weight. Moreover, the ALJ lifted this comment out of context; Dr. Davidson said that Ms. Kilinski was "known to be a very intelligent, competent, and high functioning person *normally*." *Id.* (emphasis added). Dr. Davidson went on to say that following her treatment for cancer in 2000, Ms. Kilinski's concentration was impaired and she was easily fatigued. *Id.*

-11-

determining a claimant's physical and mental RFC, an ALJ must determine the physical and mental demands of the claimant's past relevant work, followed by an assessment of whether the claimant has the ability to meet the job demands notwithstanding her physical and mental limitations. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). "We have long recognized the Commissioner's 'basic obligation' to fully investigate the physical and mental demands of a claimant's past work and compare them to her current capabilities." *Hayden v. Barnhart*, 374 F.3d 986, 991 (10th Cir. 2004). Although the burden remains on the claimant to establish that she is unable to perform her past work, "if the ALJ fails to make the requisite inquiry regarding the exertional demands of a claimant's prior work and the record is devoid of evidence on that issue, a case must be remanded to develop an adequate record." *Id.*

The VE submitted an exhibit describing Ms. Kilinski's past jobs, which identified the technical writer job in the Department of Labor's Dictionary of Occupational Titles (DOT). Aplt. App. Vol. I at 109. Pursuant to that listing, DOT 131.267-026, the job requires, among other skills: a reasoning level of 5 ("Apply principles of logical or scientific thinking to define problems, collect data, establish facts, and draw valid conclusions. Interpret an extensive variety of technical instructions in mathematical or diagrammatic form. Deal with several abstract and concrete variables."), a specific vocational preparation of 8 ("Over 4 years up to and including 10 years"), a math level of 3 ("Compute discount, interest, profit, and

-12-

loss; commission, markup, and selling price; ratio and proportion; and percentage. Calculate surfaces, volumes, weights, and measures.").  In addition, the job requires frequent handling and fingering.

Neither Ms. Kilinski nor the VE discussed the job demands of a technical writer at the administrative hearing except, as noted above, the VE testified that Ms. Kilinski's past jobs required "pretty extensive keyboarding," Aplt. App. Vol. II at 521.  The ALJ made no inquiry or findings about the job or Ms. Kilinski's ability to perform this job between December 1, 1999, and October 1, 2003.  Accordingly, because the ALJ's decision contains "no comparison of her prior work with her capabilities," a remand is required to permit the ALJ to conduct this comparison. *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993).

## C.  Treating Physician's Opinion

Ms. Kilinski next contends that the ALJ improperly disregarded the opinion of her treating physician, Dr. Davidson, who provided a report dated August 31, 2004, opining that Ms. Kilinski's cancer and treatment rendered her unable to work from December 1999 through August 2004.  Aplt. App. Vol. II at 423-24.  The ALJ determined that Dr. Davidson's opinion was entitled to no weight "because it [was] not well supported by underlying clinical evidence accumulated by Dr. Davidson or others.  More precisely, it is inconsistent and actually refuted by the clinical record accumulated prior to October 2003."  *Id.* Vol. I at 18.

When evaluating a treating physician's medical opinion, the ALJ must conduct a two-part inquiry: (1) whether the opinion is to be accorded controlling weight, and (2) even if it is not entitled to controlling weight, the opinion is still entitled to deference and "the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright)." *Krauser*, 638 F.3d at 1330. At the second step, the ALJ must "give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Id.*; *see also Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (stating factors for evaluating treating physician's opinion).

Ms. Kilinski complains that the ALJ did not address all of the relevant factors. But as she recognizes, the ALJ is not required to discuss each factor. *Oldham*, 509 F.3d at 1258. She also argues that the ALJ ignored evidence of her complaints of fatigue and shortness of breath, thus picking and choosing evidence to support his conclusion. But while Ms. Kilinski did report fatigue, depression, and shortness of breath during the relevant period, she also reported that she had good energy and was feeling well. Moreover, she declined medication to treat her depression until April 2002; thereafter, she reported that the medication relieved her depression. *See Kelley v. Chater*, 62 F.3d 335, 337-38 (10th Cir. 1995) (affirming ALJ's determination that claimant could perform work based in part on the fact that his condition was well-controlled by medication). The ALJ recognized that Ms. Kilinski had reported both bad and good days and also noted that the objective

-14-

medical evidence generated during the relevant period did not support Dr. Davidson's opinion that Ms. Kilinski was unable to work between December 1999 and October 2003.

The ALJ completed the required two-step process for evaluating a treating physician's opinion. First, he determined that the opinion was not entitled to controlling weight because it was not supported by objective medical evidence and was inconsistent with the medical evidence. *Cf. Krauser*, 638 F.3d at 1330 (stating the treating physician's medical opinion is entitled to controlling weight "if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record"). Second, he made clear how much weight the opinion was being given, *see id.*, by stating it was entitled to no weight, explaining that the medical evidence did not support Dr. Davidson's opinion that Ms. Kilinski suffered from debilitating fatigue and depression during the relevant period. He determined that the clinical records, including those of Dr. Davidson, showed normal strength and findings, and that Ms. Kilinski was clinically stable. He noted additionally that Ms. Kilinski was exercising and that medication relieved her depression. Accordingly, we cannot say that the ALJ's treatment of Dr. Davidson's opinion was error.

### D. Credibility and Subjective Complaints

Finally, Ms. Kilinski argues that the ALJ failed to properly evaluate her credibility and subjective complaints in assessing her RFC. She claims that the ALJ

erred in his RFC assessment and in concluding that she could perform her past job as a technical writer.  As discussed above, on remand the ALJ should reassess Ms. Kilinski's RFC and reevaluate her credibility, in particular, concerning her thumb pain.

### III.  Conclusion

The judgment of the district court is REVERSED and the cause is REMANDED to the district court with instructions to remand to the Commissioner for further proceedings consistent with this order and judgment.

Entered for the Court


Jerome A. Holmes
Circuit Judge