**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 7 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

ANN T. HAYDEN,

        Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of the Social Security
Administration,

        Defendant-Appellee.

No. 03-1043

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 01-WM-1861 (PAC))

---

Submitted on the briefs:

Gerald A. Harley, Esq., of Harley Law Offices, Littleton, Colorado, for Plaintiff-Appellant.

John W. Suthers, United States Attorney, Kurt J. Bohn, Assistant U.S. Attorney, Teresa H. Abbott, Special Assistant U.S. Attorney, Social Security Administration, Office of the General Counsel, Denver, Colorado, for Defendant-Appellee.

---

Before **EBEL**, **HENRY**, and **MURPHY**, Circuit Judges.

---

**PER CURIAM.**

Ann T. Hayden appeals from an order of the district court affirming the Commissioner's decision to terminate her prior award of Social Security disability benefits.[1] Our jurisdiction arises under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291. Because we conclude that the administrative law judge (ALJ) committed legal error in (1) determining that Ms. Hayden could perform her past relevant work; and (2) failing to support his credibility findings with substantial evidence in the record, we reverse.[2]

## I. Standard of review and applicable law

We review the Commissioner's decision to terminate benefits to determine whether substantial evidence supports the decision. *Glenn v. Shalala,* 21 F.3d 983, 984 (10th Cir. 1994). In addition, the Commissioner's "failure to apply correct legal standards, or to show us that she has done so, are also grounds for reversal." *Winfrey v. Chater,* 92 F.3d 1017, 1019 (10th Cir. 1996).

---

[1] After a claimant has been awarded disability benefits, the Commissioner is required to review the case periodically to determine whether there has been any medical improvement in the claimant's condition and whether that improvement affects the claimant's ability to work. 20 C.F.R. § 404.1594(a).

[2] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

An eight-step sequential evaluation process is used in termination-of-benefit reviews. [3] *See* 20 C.F.R. § 404.1594(f)(1) through (8).  If the Commissioner meets her burden of establishing that the claimant's medical condition has improved and that the improvement is related to the claimant's ability to work, the Commissioner must then demonstrate that the claimant is currently able to engage in substantial gainful activity.  *See Glenn,* 21 F.3d at 987; 20 C.F.R. § 404.1594(f)(4), (6), (7).  To make this determination, the Commissioner first re-assesses the claimant's residual functioning capacity (RFC) based on all current impairments and then considers whether she can still do the work she has done in the past.  20 C.F.R. § 404.1594(f)(7).  If she is unable to do her past relevant work, at step eight the Commissioner considers the RFC and the claimant's age, education, and past work experience to determine whether she can do other work.  *Id.* § 404.1594(f)(8).  If the claimant can perform either her past relevant work or other work, "disability will be found to have ended."  *Id.*

## II.  Relevant facts and proceedings

Before her disability began, Ms. Hayden had worked as a receptionist, doing typing, filing, filling out medical forms, answering the phone, using an adding machine, retrieving files, and carrying boxes of files.  Aplt. App. Vol. II

---

[3]    Respondent describes it as a seven-step process, but a review of § 404.1594 and the brief reveals that counsel skipped step five of the sequence.

at 30, 88-89. Ms. Hayden was originally found to be disabled as of June 26, 1991, due to severe sarcoidosis,[4] left cranial nerve palsy, cervical disc herniation and cervical radiculopathy.[5] *Id.* at 16. She was subsequently diagnosed with arthralgia and fibromyalgia, *see id.* at 23, which was reflected by pain, swelling, and stiffness in her hands and wrists, with diminished grip strength, *id.* at 339, 349.

After a medical consultant reviewed her medical records in 1998, the Commissioner notified Ms. Hayden of the agency's conclusion that Ms. Hayden's disability had ceased on March 1, 1998, and that benefits would terminate on May 1. The conclusion was based on findings that she had medically improved and was able to return to work as a receptionist. *Id.* at 16 & 275. Ms. Hayden requested reconsideration. She filled out various questionnaires, *see id.* at 278-81, and later submitted additional medical records. On November 18, 1998, a disability hearing officer scheduled a hearing at which Ms. Hayden failed to appear. She contends she never received notice of this hearing. The hearing officer considered Ms. Hayden's daily activities questionnaire, a pain questionnaire, her objection to proposed termination of medical benefits, and her

---

[4]   Ms. Hayden's sarcoidosis, a disease causing granulated lesions, involved her lungs.

[5]   Radiculopathy is a clinical situation in which the nerve root is compressed by a prolapsed or herniated disk.

medical records through May 1, 1998. *Id.* at 284-86. He noted that, although her sarcoidosis appeared to be "inactive," current x-rays revealed continuing cervical disc space narrowing and neural impingement. *Id.* at 285. He also noted that Ms. Hayden still reported symptoms demonstrating radiculopathy and continued to take pain medications, and that she had apparently developed fibromyalgia. *Id.* He concluded, based on her medical records, that, although Ms. Hayden continued to have severe impairments, *id.* at 288, her recent medical records did not contain specific complaints about *left* shoulder and arm pain (although records demonstrated new complaints regarding *right* shoulder and arm pain, *id.* at 350-52), and that she therefore had medical improvement that increased her ability to work. *Id.* at 287. But the hearing officer did not have a current medical RFC assessment, and he stated that he could not accurately assess her RFC because there were "conflicts as to the claimant's symptom severity and impact on her function . . . and how much it is improved with medication." *Id.* at 288. The officer concluded that Ms. Hayden "must be denied disability on the basis of insufficient information to assess the extent of her disability," *id.*, thereby affirming the Commissioner's prior decision to terminate benefits.

Ms. Hayden requested a hearing by an ALJ, which was held in May 1999. She submitted an RFC assessment prepared by her treating physician and additional medical reports. She testified that the fibromyalgia affected her hands

the most, and that they swelled and were stiff almost daily. *Id.* at 33-34. She

stated that sometimes she could not write, drive, pick up heavy things, or grip a

doorknob, and that they were "always painful." *Id.*

The ALJ questioned a vocational expert (VE) about jobs in the local

economy that Ms. Hayden could perform, including her previous job as a

receptionist, in the following colloquy:

> [A]ssume . . . an individual who could perform exertionally at the
> sedentary level, however the person would be unable to push or pull
> with the upper extremities. Would be able to occasionally stoop,
> kneel, crouch, but would never be able to crawl. Would be able to
> frequently handle, and would be able to do no overhead reaching.
> Could such a person . . . perform the work previously performed by
> Ms. Hayden as a receptionist as that work is done in the national
> economy?
> A. Yes, Judge. . . .

*Id.* at 46. Ms. Hayden's attorney then asked the VE whether Ms. Hayden could do

her former work if she could only use her hands in the manner in which she

testified – "occasional" or "less than occasional" instead of "frequently." [6] *Id.*

at 47-48. The expert replied that, "[b]ased on her testimony, . . . specifically with

respect to . . . the use of her hands, I don't believe she could do work as a

---

[6]     The policy statements promulgated by the Commissioner note that "[m]ost unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions." SSR 83-10, 1983 WL 31251, at *5. The statements define "occasionally" as "occurring from very little up to one-third of the time." *Id.* "Frequent" is defined as "occurring from one-third to two-thirds of the time." *Id.* at *6.

-6-

receptionist," *id.* at 47, but stated that she could perform work as a surveillance systems monitor, *id.* at 48-49. The ALJ next asked:

> Okay, any other work [besides surveillance systems monitor] that someone could do with the same restrictions I gave you, but occasional use of the upper extremities?
> A. I would have to say no, Judge.

*Id.* at 49. According to the VE, approximately 135 surveillance monitor jobs existed statewide. *Id.*

In his decision, the ALJ found that Ms. Hayden continued to have severe medical impairments including "neck pain, GERD, [7] systemic rheumatic disorder, arthralgia, and fibromyalgia." *Id.* at 23. He found her testimony to be "not entirely credible." *Id.* But, based on the record as a whole, including Ms. Hayden's testimony, the ALJ determined that Ms. Hayden had an RFC to perform sedentary work, subject to the following limitations: "She should not push/pull with her upper extremities. She can occasionally balance, stoop, kneel and crouch, but she cannot crawl; nor should she do any overhead work or frequent handling." *Id.* at 21 & 23.

The ALJ accepted the VE's testimony as valid, *id.* at 22, but interpreted it to mean that "someone with claimant's vocational factors, limitations, and [RFC]

---

[7] GERD (Gastroesophageal reflux disease) is a disorder involving the recurrent return of acidic stomach contents back up into the esophagus, causing irritation, scarring, and strictures.

could perform the sedentary, semi-skilled job of receptionist." *Id.* at 22. Accordingly, the ALJ concluded that Ms. Hayden's disability ceased, effective March 1, 1998, as she could perform her past relevant work as a receptionist. *Id.* at 23. The district court affirmed.

## III. Discussion

**A. Error in determining Ms. Hayden could perform her past relevant work.** Ms. Hayden argues that the ALJ's conclusion that she is able to do her past relevant work is not consistent with the VE's testimony, which the ALJ accepted as valid. We agree. The ALJ found that Ms. Hayden's RFC was limited so that she should *not* do "frequent handling." *Id.* The level lower than "frequent" is "occasional," SSR 1983-1991, 1983 WL at *5-*6, so the ALJ's finding, expressed in positive terms, limits her to doing occasional handling. The first hypothetical the ALJ gave to the VE included the ability to do "frequent handling" – an ability the ALJ ultimately determined that Ms. Hayden did not have. Aplt. App. Vol. II at 23. As noted above, the VE testified that the *only* sedentary, unskilled job a person with Ms. Hayden's limitations could perform if she could use her upper extremities only occasionally was a surveillance monitor. Thus, the ALJ erred in concluding that Ms. Hayden could perform her past work as a receptionist. *See Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) (reversing because ALJ's findings similarly conflicted with VE's testimony).

The Commissioner argues that substantial evidence supports her decision. But she does not address the inconsistency between the ALJ's ultimate findings and conclusion and the VE's testimony based on the limitations found by the ALJ. The Commissioner further argues that it was Ms. Hayden's burden to show an inability to perform her past relevant work, and that she failed to do so. But this argument misstates the burden, which is on the Commissioner in a termination-of-benefits review. We previously have expressly rejected this same argument in *Glenn,* 21 F.3d at 987 (citing regulations). That the Commissioner raises this argument on appeal is surprising and troublesome, as counsel conceded at oral argument in the district court that the proper steps and burdens in termination-of-benefits proceedings are found in § 404.1594(f), not in § 404.1520.[8] Aplt. App. Vol. I at 25.

We also briefly address the Commissioner's argument that the decision should be affirmed because an ALJ "has no obligation to question a vocational expert if the claimant can return to past relevant work," and an ALJ is not required to "utilize information provided by a VE as to the requirements of a claimant's past work." Aple. Br. at 26 (quoting *Kepler v. Chater*, 68 F.3d 387, 392 (10th Cir. 1995), and citing *Potter v. Sec'y of Health & Human Servs.*,

---

[8]     Indeed, § 404.1520 itself states that § 404.1594(f) applies to continuation-of-benefits determinations. § 404.1520(a).

905 F.2d 1346, 1349 (10th Cir. 1990)).  First, the quoted statements beg the question whether the ALJ, having sought out and accepted the VE's testimony as valid, properly interpreted and applied that testimony.  Second, the Commissioner takes both statements out of the context in the cases in which they were articulated.  Both cited cases are initial denial-of-benefits cases, in which the *claimant* bears the burden at step four,    *see* § 404.1520(e), of showing that her impairment renders her unable to perform her past relevant work.        *Kepler* , 68 F.3d at 392; *Potter* , 905 F.2d at 1349.

We have long recognized the Commissioner's "basic obligation" to fully investigate the physical and mental demands of a claimant's past work and compare them to her current capabilities.      *Henrie v. United States Dep't of Health & Human Servs.* , 13 F.3d 359, 360-61 (10th Cir. 1993).  In      *Henrie* we held that, even though it was the claimant's burden at step four to establish her inability to perform past work, if the ALJ fails to make the requisite inquiry regarding the exertional demands of a claimant's prior work and the record is devoid of evidence on that issue, a case must be remanded to develop an adequate record. *Id.* at 361.  In  *Kepler* , we concluded that the record "contained sufficient evidence regarding the demands of claimant's past relevant work to satisfy the ALJ's duty of inquiry under   *Henrie*  . . . ."  68 F.3d at 392.

In *Potter*, the ALJ had referred to the *Dictionary of Occupational Titles* to determine the exertional demands of a bookkeeper position, and we held that he applied proper legal standards. 905 F.2d at 1349; *and see* 20 C.F.R. § 404.1560(b)(2) (providing that Commissioner may use the services of VEs or other resources like the *Dictionary of Occupational Titles* to obtain evidence needed to determine whether claimant can do past relevant work).

And in *Glenn*, a termination-of-benefits case briefly cited by the Commissioner, we held that the ALJ was not required to seek " *additional* information from a vocational expert" because he had already determined that the claimant's impairment did not prevent her from performing any of the demands of her past relevant work based on evidence already in the record. *See* 21 F.3d at 986-87 (emphasis added). Here, the ALJ apparently recognized both his duty to develop the record regarding the demands of Ms. Hayden's past relevant work as it is generally performed in the national economy, and his burden under § 404.1594(f)(7) to establish that she could return to that work, and properly sought the expert testimony of a VE to satisfy his duty and burden. Counsel's arguments are irrelevant and unnecessarily confusing and misleading.

**B. Error in failing to support credibility determination.** One paragraph in the ALJ's order is devoted to supporting his credibility determination. It states:

-11-

> The undersigned finds claimant is not entirely credible. Her testimony indicates she is in a bad condition most of the time, yet the medical evidence demonstrates her symptoms wax and wane. (Ex. B15). Many records say claimant was doing well until 3 weeks before the hearing. (Ex. B15/19 and 23).

*Id.* at 21. Ms. Hayden argues that the ALJ's credibility determination was not properly analyzed under the requirements of SSR 96-7p. [9] Under this ruling, a credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record" and be "sufficiently specific" to inform subsequent reviewers of both the weight the ALJ gave to a claimant's statements and the reasons for that weight. SSR 96-7p, 1996 WL 374186, at *4.

We are not sure of the extent of Ms. Hayden's complaint of error. In her appellate brief, Ms. Hayden states only that the ALJ failed to "elaborate on which parts" were "not entirely creditable." Aplt. Br. at 13. But the brief does not point to what limitations were not properly considered except to mention, in another section, that Ms. Hayden testified that she suffered from severe headaches and would have to miss work at least two days a month. *See id.* at 9.

The ALJ noted her complaints about continuing arm and neck pain and migraines, as well as her testimony about walking, standing, and sitting limitations. Aplt. App. Vol. II at 20-21. The ALJ obviously found her testimony

---

[9] Social Security Rulings are binding on the ALJ. *See* 20 C.F.R. § 402.35(b).

-12-

that she could not lift more than ten pounds and could not stand or walk more than a few hours/day to be credible, as he assessed her RFC to be for only sedentary work. He must have also considered credible her testimony that she could not frequently use her hands, as he limited her RFC for sedentary work to *not* doing frequent handling. And he must have found that her testimony about continuing neck pain with use of her arms was credible to some extent, as he also limited her RFC to not pushing, pulling, or reaching overhead. Thus, we disagree with Ms. Hayden's assertion that the ALJ found that she "was in total remission." *Id.* at 13.

We are concerned, however, with the ALJ's failure to address Ms. Hayden's claims of disabling headaches, which the VE testified would preclude her from holding any job if they prevented her from working two days per month. Aplt. App. Vol. II at 52. Ms. Hayden testified that she got tension and migraine headaches two or three times a week, especially when she tried to read. *Id.* at 38-39. She testified that it took six to eight hours to get over a tension headache, and three to four days to get over a migraine. *Id.* at 38. Medication for migraines upset her stomach, so she would just go in a dark room with no noise and try to sleep. *Id.* at 39. The ALJ did not specify what testimony

he found not to be credible. [10] Ms. Hayden testified that she still had neck pain "mostly all the time," but with the pain appearing intermittently, *id.* at 31; that her GERD acted up about twenty times per month, depending on what kind of medication she takes or food she eats, *id.* at 32-33; that her hand and wrist swelling, stiffness, and pain were intermittent during any day, *id.* at 33-34; that her knee pain occurred three or four times per week, *id.* at 34; and that she had headaches two or three times per week, *id.* at 39. She stated that she "always" had some pain, but that some days she could "try to forget it" for a couple of hours if she tried hard enough. *Id.* at 39.

In finding part of Ms. Hayden's testimony not to be credible, the ALJ referenced several exhibits that he believed were inconsistent with her testimony. *Id.* at 21. Exhibit B-15 is Ms. Hayden's University Hospital medical records from September 7, 1994 to May 1, 1998; exhibit B-19 is Ms. Hayden's statement of

---

[10]     Ms. Hayden also testified that she could not sit for more than forty-five minutes without having to get up and walk around, that she could not stand for more than one hour; and that she had to lay down during the day, Aplt. App. at 40-41, but the ALJ did not include these limitations in his hypothetical to the VE, nor did he address them in his decision other than to note her testimony, *id.* at 21. She also testified that she could not tolerate higher doses of medication needed to relieve pain, *id.* at 41, and that prescription medicine for pain caused problems with her GERD, *id.* at 32, but the ALJ did not comment on this testimony. Her testimony was supported in the medical record. *See id.* at 349 (noting "multiple past NSAID trials . . . all causing GI intolerance."). Because Ms. Hayden's brief does not specifically address these issues, we do not discuss them above.

-14-

medical treatment and medications dated May 1, 1999; and exhibit B-23 is treating physician Dr. Hobbs's office notes dated February 23, 1999. *Id.* at 3. The referenced medical records indicate that Ms. Hayden's *objective* symptoms of hand and wrist joint swelling and stiffness do wax and wane, but Ms. Hayden's testimony quoted above was consistent with that description. Thus, there is no inconsistency between these records and her testimony to support the credibility finding.

These medical records, including Dr. Hobbs's records, also indicate that Ms. Hayden had ongoing and continued complaints of low back pain and arthralgias, impressive tenderness at classic fibromyalgia trigger points, continuing sleep disturbance and aching, and continuing arm and neck pain from 1997 through 1999, despite taking prescription and over-the-counter pain medication, although she would experience periods of improvement. *See id.* at 336-39, 345, 347-50, 400. These records are consistent with Ms. Hayden's testimony that she continues to have pain on a daily basis. As SSR 96-7p explains,

> [s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time, and this may explain why the individual does not always allege the same intensity, persistence, or functional effects of his or her symptoms. Therefore, the adjudicator will need to review the case record to determine

whether there are any explanations for any variations in the individual's statements about symptoms and their effects.

SSR 96–7p, 1996 WL 374186, at *5.

As noted above, the medical records cited simply do not support the ALJ's statement that Ms. Hayden was doing well until three weeks before the May 27, 1999 hearing. Thus, we have only the implication that Ms. Hayden was exaggerating her description of disabling pain without the requisite link to substantial evidence. Having failed to properly assess plaintiff's credibility, in part by not giving "specific reasons for the weight given to [Ms. Hayden's] statements," as supported by the record, *see id.* at *4, and by failing to adequately consider (or show us that he has considered) the other required factors, *see id.* at *5-*8, the ALJ did not provide the documentation necessary to give Ms. Hayden a "full and fair review" of her claim and to "ensure a well-reasoned . . . decision." *Id.* at *4; *see Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) (quoting SSR 96-7p). Thus, we conclude that the ALJ's credibility determination is not supported by substantial evidence in the record and also requires reversal as legal error. *See Briggs,* 248 F.3d at 1239 ("The failure to make credibility findings regarding the claimant's critical testimony fatally undermines the [Commissioner's] argument that there is substantial evidence adequate to support his conclusion that claimant is not under a disability.") (quotation omitted).

-16-

**C. Request for no remand.** Ms. Hayden asks that this case be reversed with an order to reinstate her benefits from March 1, 1998, and that the case not be remanded for further proceedings, since these proceedings and appeals have taken almost six years and the Commissioner failed to meet her burden to establish that Ms. Hayden could return to her past relevant work. Respondent has not addressed the argument.

The Commissioner may not terminate disability benefits without making findings demonstrating that a claimant has medically improved to the point that she is able to perform either her past work or "other work" existing "in significant numbers." § 404.1594(f)(7), (8); 20 C.F.R. § 404.1560; *Pacheco v. Sullivan*, 931 F.2d 695, 698 (10th Cir. 1991) (holding that benefits should not be terminated until proper findings are made, and remanding for reinstatement of disability benefits, including retroactive payments). Further, when a court reverses an ALJ's decision terminating benefits, the decision "is vacated and is no longer in effect." Continued benefits are payable "pending a new decision" by the agency. 20 C.F.R. § 404.1597a(i)(6). Thus, reversal in this case means that the case is simply remanded to the agency, and that Ms. Hayden, who has already been adjudged to be disabled by the Commissioner, maintains her disability status and is entitled to payment of any benefits that have been withheld during the

appeals process. It is up to the agency to decide whether to begin new termination proceedings.

The judgment of the district court is REVERSED with instructions to REVERSE and REMAND to the Commissioner for reinstatement and payment of continuing benefits.