**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 28, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

TIMOTHY L. ARLES,

Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration,

Defendant-Appellee.

No. 11-7024
(D.C. No. 6:09-CV-00471-FHS-KEW)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **GORSUCH**, and **MATHESON**, Circuit Judges.


Timothy L. Arles appeals from a judgment of the district court affirming

the Commissioner's denial of his application for supplemental security income

benefits (SSI). We exercise jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C.

§ 405(g) and affirm.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.

An Administrative Law Judge (ALJ) denied Mr. Arles's request for benefits at the last step of the five-step sequential process for determining disability. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).[1] At the time of the hearing before the ALJ, Mr. Arles was 44 years old and weighed 329 pounds. He testified about his difficulties with cramping and swelling hands after carpal-tunnel surgery, swollen knees, a painful left foot, daily migraine headaches, neck pain, loss of near vision from glaucoma, low-back problems, and an ache from a rupture in his stomach. He stated that medical providers have prescribed eye drops for his diagnosed low-tension glaucoma and also pain pills, sleeping pills,

---

[1]    As this court has explained:

Step one requires a claimant to establish [he] is not engaged in substantial gainful activity. Step two requires the claimant to establish [he] has a medically severe impairment or combination of impairments. Step three asks whether any medically severe impairment, alone or in combination with other impairments, is equivalent to any of a number of listed impairments so severe as to preclude substantial gainful employment. If listed, the impairment is conclusively presumed disabling. If unlisted, the claimant must establish at step four that [his] impairment prevents [him] from performing work [he] has previously performed. If the claimant is not considered disabled at step three, but has satisfied [his] burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of [his] age, education, and work experience.

*Fischer-Ross*, 431 F.3d at 731 (citations and internal quotation marks omitted).

-2-

nerve pills, arthritis pills, and high-blood-pressure pills. Mr. Arles further related

that he does not take any of these medications or seek medical care because he

lacks financial resources. He does take over-the-counter acetaminophen and

occasionally a pain pill offered by a friend. Mr. Arles explained he has difficulty

sleeping at night and needs to take cat naps during the day. He spends about half

the day with his feet up, watching television and smoking a cigarette.

Because Mr. Arles had worked for only two months since 1996, the ALJ

began his analysis at step two of the process. At that step, the ALJ found that

Mr. Arles had the severe physical impairments of carpal-tunnel syndrome, ankle

deformity, and obesity. Based on his review of the medical records, however, he

determined that Mr. Arles's headaches and glaucoma had only a minimal effect

on his ability to work and were not severe impairments.

At step three, the ALJ found that none of the identified impairments alone

or in combination met or equaled any listed impairment. The ALJ then assessed

Mr. Arles's residual functional capacity (RFC) and determined that he could

perform a range of sedentary work, so long as it did not involve the constant use

of hands for repetitive tasks such as keyboarding.[2] Underlying the ALJ's RFC

---

[2] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking

(continued...)

assessment was a finding that Mr. Arles's testimony on the extent of his limitations was not entirely credible.

Mr. Arles had no past relevant work to consider, so the ALJ proceeded to step five. For a finding on whether Mr. Arles could perform work in the national economy, the ALJ relied on a vocational expert. In response to the ALJ's hypothetical question, the expert testified that an individual of Mr. Arles's age, educational level, vocational history, and the RFC found by the ALJ could perform occupations such as order clerk, charge-account clerk, and optical-goods assembler. These jobs existed in significant numbers in the regional and national economy.

The ALJ therefore concluded that Mr. Arles was not entitled to SSI and denied his application. The Appeals Council denied review, making the ALJ's decision the final agency decision. The district court affirmed. On appeal of the district court's ruling, Mr. Arles asserts that the Commissioner's denial of benefits must be reversed because the ALJ did not perform a proper credibility determination. He also contends that throughout the sequential-evaluation

_____

[2](...continued)
and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a).

-4-

process, the ALJ failed to give appropriate consideration to his restricted vision and obesity.

**II**.

"We independently review the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence." *Krauser v. Astrue*, 638 F.3d 1324, 1326 (10th Cir. 2011). We do "not reweigh the evidence or substitute our judgment for the Commissioner's." *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). "[D]isability requires both an inability to engage in any substantial gainful activity and a physical or mental impairment, which provides reason for the inability." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (internal quotation marks omitted).

**A.    Credibility Determination**

Mr. Arles first contends that the ALJ improperly discounted his testimony. "Credibility determinations are peculiarly the province of the finder of fact," though findings on credibility "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (alteration and internal quotation marks omitted). Our precedent, however, "does not require a formalistic factor-by-factor recitation of the evidence so long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility." *Poppa v.*

*Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) (alteration and internal quotation marks omitted).

The ALJ made several explicit findings on Mr. Arles's credibility. He noted that no treating physician "place[d] any functional restrictions on [claimant's] activities that would preclude [modified] sedentary work activity," and "no objective evidence [showed] an impairment" that would justify his "self-imposed" restriction of "stay[ing] in a recliner all day." Admin. R., Vol. 2 at 14. And reviewing Mr. Arles's scant work history, the ALJ found "the evidence is persuasive that the claimant is not motivated to work." *Id.*

The ALJ noted the lack of medical evidence documenting some of the ailments claimed by Mr. Arles, such as stomach rupture. As a counterweight to Mr. Arles's assertion that he could not afford medical care, the ALJ observed that there was no evidence that Mr. Arles sought to obtain any low-cost care or that he had been denied treatment because of his financial condition. The ALJ further commented that Mr. Arles apparently could afford cigarettes.

Mr. Arles asserts the ALJ's credibility determination is (1) inconsistent with the record; (2) erroneous in its use of boilerplate language; (3) unfair in discounting poverty as his reason for lack of medical treatment; and (4) impermissibly speculative in designating his restricted daily activities as self-imposed and in stating that he lacked motivation to work. We see little merit in these arguments.

According to Mr. Arles, the ALJ miscast the evidence on his knee impairment and ignored his complaints of neck pain. The medical record does allude to "generalized degenerative joint disease/osteoarthritis neck, low back and knees," Admin. R., Vol. 2 at 152, and "degenerative changes . . . in the cervical spine," *id.* at 180. Based on the record as a whole, however, these limited and nonspecific references do not require reversal of the ALJ's credibility decision. The ALJ provided particularized reasons for discounting Mr. Arles's testimony on the extent of his knee and neck problems.

Mr. Arles's remaining attacks on the ALJ's credibility determination warrant only summary discussion. Although boilerplate language may be disfavored, it is insufficient to support a credibility determination "*in the absence of a more thorough analysis.*" *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) (italics added). Here, the ALJ engaged in a broad analysis of the evidence relevant to Mr. Arles's credibility. And "extensiveness of the attempts (medical and nonmedical) to obtain relief" and "frequency of medical contacts" are factors to be considered by ALJ in assessing credibility. *See Kepler*, 68 F.3d at 391. "[I]nability to pay may provide a justification for [the] claimant's failure to seek treatment" if it is accompanied by evidence that the claimant sought and was refused treatment. *Threet v. Barnhart*, 353 F.3d 1185, 1191 n.7 (10th Cir. 2003). As the ALJ noted, Mr. Arles submitted no evidence showing attempts to obtain relief from his alleged "constant and disabling painful condition."

-7-

Admin. App., Vol. 2, at 14.  Further, the ALJ's comments about self-imposed restrictions and lack of motivation to work are based on permissible inferences, not speculation.

The ALJ's decision "contain[s] specific reasons for the finding on credibility, supported by the evidence in the case record" and is "sufficiently specific to inform subsequent reviewers of both the weight the ALJ gave to a claimant's statements and the reasons for that weight." *Hayden v. Barnhart*, 374 F.3d 986, 992 (10th Cir. 2004) (internal quotation marks omitted).

**B.    Consideration of claimant's vision limitations and obesity during the sequential evaluation process.**

Mr. Arles also claims that the RFC determination, hypothetical question to the vocational expert, and resulting step-five conclusion were flawed for failure to give adequate consideration to his visual problems and obesity.  The ALJ's credibility determination informs our review of his conclusions on Mr. Arles's RFC.  *See Poppa*, 569 F.3d at 1171 ("Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined.").

Concerning Mr. Arles's vision, the ALJ recognized that he had been diagnosed with glaucoma, found the glaucoma "mild and treatable," and determined that it was not a severe impairment.  Admin. R., Vol. 2 at 12.  The record reveals two instances in which Mr. Arles had his vision assessed.  In

-8-

September 2006, a doctor of optometry observed that Mr. Arles had glaucoma and that his field of vision was "abnormal/worse" in his right eye "possibly because of [decreased] vision." *Id.* at 188. Notwithstanding this observation, the optometrist's chart showed that Mr. Arles had essentially normal distance visual acuity, and contained no findings regarding "Near Point" vision. *Id.* The following month, his general practitioner recorded Mr. Arles's distance vision as "bilateral 20/20." *Id.* at 151. Nowhere in the medical record is there a report of near-vision problems.[3]

Mr. Arles contends that the ALJ should have taken a near-vision limitation into account in his RFC determination and hypothetical question to the vocational expert. *See id.* at 39; Aplt. Br. at 17. Because such a limitation has no support in the record, the ALJ was not required to consider near-vision difficulties in determining Mr. Arles's RFC or in ascertaining the number of suitable jobs in the national economy. *See Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996) (An ALJ's questions to a vocational expert "must reflect with precision all of

---

[3] On appeal, Mr. Arles makes a brief objection to the ALJ's failure to explain the relative weight given to the findings of the two eye specialists. Contrary to Mr. Arles's contention, the findings are consistent with each other, so the ALJ did not "cho[o]se one opinion over another." Aplt. Br. at 19. Thus, no detailed explanation was necessary. *Cf. Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007) (stating that if an ALJ rejects or assigns less-than-controlling weight to the opinion of a treating physician that is inconsistent with other medical evidence, the ALJ must explain the reasons for his determination).

[a claimant's] impairments, but they need only reflect impairments and limitations that are borne out by the evidentiary record.") (citations omitted).

Mr. Arles further asserts that the ALJ failed to include his obesity in his RFC determination. An ALJ must consider "the combined effects of obesity with other impairments" and "evaluate each case based on the information in the case record." *Titles II & XVI: Evaluation of Obesity*, SSR 02-1p, 2000 WL 628049, at **1, 6 (Sept. 12, 2002).

The ALJ could have provided a more particularized discussion of the effects of Mr. Arles's obesity on the weight-bearing joints of his knees and ankles and his hand function. Nevertheless, the ALJ's decision states that he examined the medical records and found "no evidence of an inability to ambulate effectively or an inability to perform fine and gross movements effectively." Admin. R., Vol. 2 at 12. It also specifically states that "[t]he claimant's obesity has been evaluated under the criteria set forth in SSR 02-1p." *Id.* This court's "general practice . . . is to take a lower tribunal at its word when it declares that it has considered a matter." *Hackett*, 395 F.3d at 1173. Moreover, Mr. Arles does not discuss or cite to any evidence showing that obesity further limited his ability to perform a restricted range of sedentary work. As the ALJ noted, two medical experts with the State agency found that Mr. Arles could perform greater than sedentary work activity. 20 C.F.R. § 416.927(f)(2)(i) (requiring ALJs to

"consider findings and other opinions of State agency medical . . . consultants . . . as opinion evidence").

In sum, the ALJ's decision provides an adequate discussion of the effect of obesity on Mr. Arles's RFC. *See Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004) (requiring a decision to "discuss possible ramifications of [a claimant's] obesity"). Further, the ALJ's conclusion that obesity did not interfere with Mr. Arles's ability to perform a restricted range of sedentary work is supported by substantial evidence.[4]

## III.

The judgment of the district court is AFFIRMED.


Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge

---

[4] In a partially developed argument, Mr. Arles claims that at step three the ALJ should have considered an additional musculoskeletal listing in light of his obesity. No "remand for a more thorough discussion of the listings" is required "when confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step-three determination under review." *Fischer-Ross*, 431 F.3d at 734.