*Adelman v. Berryhill*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of August, two thousand eighteen.

PRESENT:  GERARD E. LYNCH,
          CHRISTOPHER F. DRONEY,
                    *Circuit Judges*,
          WILLIAM K. SESSIONS III,
                    *District Judge*.[*]

_____

JED C. ADELMAN,

                    *Plaintiff-Appellant*,

FREDERICK ADELMAN, ABBEY ADELMAN,

                    *Intervenors*,

            v.                                          No. 16-3365-cv

NANCY A. BERRYHILL, Acting Commissioner of
Social Security Administration,

                    *Defendant-Appellee*.

_____

_____

[*]Judge William K. Sessions III, of the United States District Court for the District of Vermont, sitting by designation.

**FOR PLAINTIFF-APPELLANT and INTERVENORS:**   CAROYLN A. KUBITSCHEK, Lansner & Kubitscheck, New York, NY.

**FOR DEFENDANT-APPELLEE:**   JOSEPH A. MARUTOLLO, Assistant United States Attorney (Varuni Nelson, Arthur Swerdloff, Assistant United States Attorneys, *on the brief*), for Richard P. Donoghue, United States Attorney for the Eastern District of New York, Brooklyn, NY.

Appeal from the judgment of the United States District Court for the Eastern District of New York (Sandra J. Feuerstein, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court filed September 29, 2016, be and hereby is **VACATED and REMANDED**.

Appellant Jed C. Adelman appeals the district court's judgment denying the Commissioner's motion for judgment on the pleadings and granting in part Adelman's cross-motion for judgment on the pleadings. The district court ruled in Adelman's favor, holding that Adelman did not owe the agency for an overpayment of Social Security disability benefits for the period from February 2002 through March 2003. Adelman contends, however, that he was also entitled to retroactive reinstatement of his benefits from April 2003 onwards as a collateral consequence of the district court's holding, because the Commissioner has failed to carry her burden to provide a valid reason why Adelman's benefits should have been terminated in March. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, and repeat them here only as necessary to explain our decision.

**BACKGROUND**

The parties agree that Adelman is permanently intellectually disabled. He began to receive

childhood disability benefits based on his father's Social Security record in September 1999. In

February 2001, Adelman obtained a job making deliveries and performing other related work at

the State University of New York at Stony Brook ("SUNY") through the New York State Office

of Vocational and Educational Services for Individuals with Disabilities. While employed at

SUNY, Adelman received assistance from a job coach, who helped him learn new tasks and

succeed in his job, as well as other accommodations for his disability.

I.        **Administrative Proceedings**

In April 2003, the Social Security Administration ("SSA") sent Adelman a Notice of

Disability Cessation, stating that "Adelman's disability ha[d] ended and that he [was] not entitled

to Social Security disability payments beginning September 2001" because he had engaged in

substantial gainful work activity ("SGA"). Admin. R.[1] at 105. Because the SSA had continued to

send Adelman checks through March 2003, the SSA further stated that he was required to refund

over $16,000 to the SSA within 30 days.

Adelman and his parents, acting on his behalf, made several efforts to challenge that

decision. First, in written submissions to the agency, they argued that Adelman continued to be

disabled and that his work through the special program at SUNY should not be deemed to

evidence a disqualifying ability to perform SGA. The Adelmans' submissions repeatedly insisted

not only that Adelman had not been overpaid through March 2003, but also that he should have

---

[1] Citations to the Administrative Record below are denoted "Admin. R." Citations to the
Appendix filed by Adelman are denoted "App." Citations to the Supplemental Appendix filed by
the Commissioner are denoted "Supp. App."

continued to receive benefits thereafter. *See*, *e.g.*, *id.* at 173–74 (letter from Adelman's mother asserting that he remained disabled and his benefits should not have been suspended); 191 (January 30, 2004 "Request for Assistance," indicating that Adelman was appealing an "SGA determination" and that he "believes he should still be covered based on his participation in the 'EARN' Program at Stony Brook"). In November 2003, however, the SSA stated that it was declining to reconsider its decision, and in May 2004, it provided Adelman with a second Notice of Disability Cessation, stating that Adelman's benefits had been stopped "because of his work," and that payments could "no longer" be restarted without a new application because he had engaged in SGA during "his extended period of eligibility."[2] *Id.* at 276.

Adelman then began what became a decade-long administrative process involving four hearings before two different Administrative Law Judges ("ALJs"), as well as three decisions from the SSA's Appeals Council, which, after twice remanding the case for rehearing based on procedural errors, issued a final decision in the Commissioner's favor in 2014. Throughout those proceedings, Adelman and his parents, most often acting *pro se*, argued that the Commissioner had not shown that Adelman had a disqualifying ability to perform SGA, because he was unable to work without substantial accommodations. *See, e.g.*, *id.* at 81 (argument by briefly retained counsel that Adelman's work "should not be considered SGA, due to the fact that he continues, after all these years, to still need a job coach"); 505 (Adelman's father, arguing same). That position was supported by an SSA regulation providing that work performed under "special conditions that take into account [the claimant's] impairment" may not constitute SGA if that

---

[2] That letter appears to refer to the period of time claimants are given to file a claim for "reentitlement" to benefits following a disqualifying period of SGA, pursuant to 20 C.F.R. § 404.1592a.

4

work "does not show that [the claimant] ha[s] the ability to do [SGA]." 20 C.F.R. § 404.1573(c). Neither the ALJs nor the Appeals Council meaningfully considered the import of that regulation for Adelman's case. Instead, the hearings before the ALJs primarily focused on whether Adelman's net earnings through March 2003 met the salary threshold for SGA. All three ALJ decisions found that, at some point during Adelman's employment at SUNY, he earned enough money to constitute SGA and, accordingly, that he was required to pay back benefits received from that point forward.

Besides objecting to the SSA's claim for reimbursement, Adelman and his parents further argued that Adelman remained entitled to receive benefits because he remained disabled and had never engaged in disqualifying SGA. For instance, Adelman's father, Intervenor Frederick Adelman, wrote to the Appeals Council in August 2008, questioning why the Appeals Council did not "remand the case back to the SSA for payment of benef[its.]" Admin. R. at 640. Adelman's father wrote to the Appeals Council again in September 2009, again asserting that the Council "should consider remanding back for payment of benefits." *Id.* at 608; *see also id.* at 503 (arguing that Adelman "should not have been cut off from his benefit"). But despite those arguments, and despite the fact that, as the third ALJ decision noted, each of the intervening Appeals Council decisions had ordered the ALJ on remand to consider "whether the claimant continues to be disabled for Title II purposes because of his work and earnings," *id.* at 23, the first ALJ decision concluded that Adelman's benefits were properly terminated in March 2003 on the basis of his SGA, and the second and third ALJ decisions did not consider Adelman's entitlement to benefits after March 2003.

Adelman's administrative challenges culminated in an August 12, 2014, decision of the Appeals Council. That decision describes the issues before the Council as "whether the claimant

5

was overpaid benefits and if so, whether recovery of the overpayment may be waived." App. at 179. In the course of concluding that Adelman owed the agency for overpayments, the Council acknowledged Adelman's assertion that he had not been overpaid "because he was employed in a special program." *Id.* at 180. Instead of engaging with that argument, however, the Council, like the ALJs, focused on Adelman's net earnings during the relevant period, rather than the supports he had needed to obtain it. The Council concluded that Adelman's disability had "ceased due to [SGA] in November 2001," and accordingly, that he was not entitled to receive any benefits beginning in February 2002 and was required to return those that were erroneously given to him. *Id.* at 183–84. The decision did not directly address Adelman's argument that, because he had never engaged in SGA, he remained eligible for benefits both during the alleged overpayment period and thereafter.

## II.     District Court Proceedings

Adelman, acting *pro se*, appealed the Council's final decision to the district court. In addition to challenging the overpayment decision, Adelman asked the district court to "modify the decision of the defendant to grant monthly maximum insurance and/or Supplemental Security Income benefits to the plaintiff, retroactive to the date of the initial disability." Supp. App. at 7. Both parties cross-moved for judgment on the pleadings. Adelman's motion sought to vacate the overpayment obligation, and also repeatedly requested that the court direct the SSA to restore his benefits. *See, e.g.*, Supp. App. at 65 ("Claimant is entitled to full retroactive benefits if the record shows that benefits were improperly denied. . . . Disability benefits wrongfully terminated should be reinstated without further agency proceedings."); *see also id.* at 37, 44, 74. In his conclusion and request for relief, Adelman again asked the court to: (1) vacate his overpayment obligation; (2) "remand this case for calculation of benefits;" and (3) conclusively

6

state that Adelman had fully repaid a previous uncontested overpayment of SSI benefits.[3] *Id.* at 86.

On September 19, 2016, the district court granted Adelman's first request for relief, holding that he had not been engaged in SGA between February 2002 and March 2003, and thus was not wrongfully paid disability benefits during that time. Adopting the argument that Adelman had been making through a decade of administrative proceedings, the court relied on 20 C.F.R. § 404.1573(c) to conclude that, although Adelman had earned enough at his job to meet the salary threshold for SGA, Adelman's work had been performed under "special conditions," in that he was able to perform his work only with the assistance of a job coach and other accommodations. Because the Commissioner had failed to demonstrate that working with such accommodations showed that Adelman had the ability to perform SGA, *see* Supp. App. at 108–09, the court held that the Appeals Council lacked substantial evidence to support its finding that Adelman was not entitled to retain the disability benefits he received between February 2002 and March 2003. The district court did not address Adelman's other requests for relief.

Adelman filed a notice of appeal from the district court's decision on September 30, 2016. While that appeal was pending, the Commissioner moved the district court to alter or amend its decision. The Commissioner noted that the district court had not resolved whether

---

[3] Adelman concedes that he was previously overpaid SSI benefits, but contends that the SSI overpayment was fully recouped in 2005. The Commissioner asserts that the repayments had been deducted from Adelman's disability benefits, but when those benefits were terminated, Adelman's tax refunds had to be withheld in order to satisfy that obligation. The district court did not resolve that issue. Because the parties both referred to the issue in their briefs before this court, however, we assume that it remains a live dispute and direct the district court to address it on remand.

Adelman was owed benefits for April 2003 and beyond, and requested a remand so that the agency could determine that issue in the first instance. The district court denied the motion, holding that remand was unnecessary because the court had limited its ruling to the issue presented in the Appeals Council's decision, namely, whether Adelman owed for overpayments in the period ending in March 2003. The court reasoned that the Administrative Record was insufficient to permit the court to rule on Adelman's eligibility for benefits thereafter. Instead, it stated that Adelman would need to submit a new application including evidence that his continued employment did not constitute SGA in order to demonstrate his entitlement to receive disability benefits going forward.

## DISCUSSION

On appeal, neither party challenges the district court's ruling that Adelman did not owe the Commissioner for overpayments, because he was not wrongfully paid benefits between February 2002 and March 2003.[4] Adelman, however, argues that the ruling vacating the Appeal Council's overpayment decision as invalid should also carry additional consequences for the SSA: specifically, he argues that, because the Commissioner bears the burden in a termination proceeding, the district court should also have ordered that the Commissioner pay back disability benefits from April 2003 onwards and reinstate his disability benefits going forward until such time as the Commissioner provides a valid reason why his entitlement should end.[5] The

---

[4] Adelman's counsel reports that the Commissioner has refunded the sums it had previously seized from Adelman's father to satisfy the overpayment obligation.

[5] Adelman did not amend his notice of appeal to include the district court's ruling on the Commissioner's motion for reconsideration, which squarely rejected his request for reinstatement. Adelman's notice of appeal and opening brief were filed *pro se*, however, and we must construe those submissions liberally and interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)

8

Commissioner contends that we lack subject matter jurisdiction over this appeal to the extent that it concerns post-March 2003 disability benefits because Adelman has not administratively exhausted his claims for these benefits. She further argues that, even if the matter is remanded to the SSA for reinstatement, it would be *Adelman*'s burden to reestablish his entitlement to benefits during the contested period and going forward. We disagree with the Commissioner on both counts.

## I.      Exhaustion

Jurisdiction over social security disability appeals derives from 42 U.S.C. § 405(g), which provides in relevant part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, . . . may obtain a review of such decision by a civil action . . . . in [a] district court of the United States . . . .

The right to appeal pursuant to § 405(g) has a "non-waivable and a waivable element." *Smith v. Schweiker*, 709 F.2d 777, 780 (2d Cir. 1983). The first, "non-waivable" ─ *i.e.*, jurisdictional ─ element is that the claimant must have presented a claim for benefits to the SSA. *Id.* The second, "waivable" ─ *i.e.*, prudential ─ element is that the claimant must have "fully exhaust[ed] his administrative remedies before obtaining judicial review." *Id.* These two elements give effect to § 405(g)'s requirement that appeal be taken from a "final decision" of the Commissioner. *Abbey v. Sullivan*, 978 F.2d 37, 43 (2d Cir. 1992).

(parenthetical emphasis omitted). Because Adelman's opening brief focuses on the relief omitted by the district court in its first decision, which was the same relief it denied on reconsideration, we conclude that Adelman has adequately appealed the district court's ruling on that issue.

9

Adelman satisfied the jurisdictional element of the exhaustion requirement by presenting his request for reinstatement to the SSA. Both the Supreme Court and this Court have made clear that this element may be satisfied by something less than a formal application to the agency for the relief sought before the courts. For instance, in *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Supreme Court held that the presentment element was met where the claimant answered a state agency questionnaire and wrote a letter objecting to the state agency's tentative determination that his disability had ceased, and the SSA thereafter accepted the state agency's determination. *Id.* at 329. The Court concluded that, through those actions, the plaintiff had "specifically presented the claim that his benefits should not be terminated because he was still disabled." *Id.* Later, in *City of New York v. Heckler*, 742 F.2d 729 (2d Cir. 1984), *aff'd sub nom.*, *Bowen v. City of New York*, 476 U.S. 467 (1986), we held that the presentment element was satisfied where the claimants completed a Social Security questionnaire indicating in writing that they remained disabled and desired benefits. *Id.* at 735.

Adelman has done far more here: as described above, during the administrative proceedings Adelman and his parents repeatedly argued that he remained entitled to benefits, and discussed how those benefits should be calculated, in letters submitted to the agency. Indeed, in its final decision, the Appeals Council recognized that an argument for reinstatement had been made on Adelman's behalf. The Commissioner does not dispute that Adelman has adequately presented his claim for reinstatement to the SSA, but instead focuses her arguments on the prudential element of the exhaustion requirement.

As the Supreme Court reminds us, once a claimant has satisfied the jurisdictional requirement of presenting a claim to the agency, "application of the exhaustion doctrine is 'intensely practical.'" *City of New York*, 476 U.S. at 484, quoting *Eldridge*, 424 U.S. at 331 n.11.

10

Accordingly, the Commissioner "may waive, or be said by a court to have waived," the requirement that a claimant fully exhaust his administrative remedies. *Smith*, 709 F.2d at 780. Relevant to the present circumstance, waiver "may be inferred where the plaintiffs' legal claims are collateral to their demand for benefits." *Id.*; *accord Skubel v. Fuoroli*, 113 F.3d 330, 334 (2d Cir. 1997).

To the extent that Adelman's appeal seeks interim reinstatement retroactive to April 2003 and going forward until the Commissioner can reevaluate his eligibility for benefits, his request is collateral to his exhausted claims in the most literal sense: he is simply requesting that the district court be made to effectuate the natural consequence of its decision vacating the Appeals Council's final order. By (belatedly) conceding that Adelman is not required to return the benefits he received between February 2002 and March 2003, the Commissioner has effectively conceded that Adelman was *entitled* to receive benefits during that time. It follows that there is currently no valid decision explaining why Adelman's entitlement to benefits should have ended in or before March 2003. As discussed further below, the Commissioner bears the burden in termination proceedings. Thus, we see no reason why Adelman should not also receive benefits retroactive to that date and going forward, unless and until the Commissioner demonstrates that Adelman's entitlement to benefits has ended.[6]

---

[6] We recognize that the SSA's decision to terminate disability benefits and its decision to recover overpaid benefits are ordinarily two separate administrative actions, *see* 20 C.F.R. ⊆ 404.902(h) (termination); ⊆ 404.902(j) (overpayment), each requiring a different showing by the Commissioner, *see, e.g.*, 20 C.F.R. ⊆ 404.1594 (setting forth requirements for termination); ⊆ 404.506 (regarding waiver of overpayment), and that vacating a termination decision is not necessarily "collateral" to vacating an overpayment decision. Here, however, the two decisions stand or fall together: the same notice from the SSA both terminated Adelman's benefits and sought to recover overpaid benefits on the unsupported basis that Adelman's work for SUNY during a particular time period was SGA. It is thus apparent without further factual development

11

When a court invalidates the Commissioner's decision to terminate a claimant's disability benefits, it has the power to order interim reinstatement until the Commissioner can reach a valid termination decision.[7] For instance, in *City of New York*, a class of plaintiffs alleged that the SSA had terminated the benefits of mentally ill claimants by making procedurally defective determinations regarding their residual functional capacity. 742 F.2d at 731–33. We affirmed the district court's interim reinstatement order, which "ha[d] the effect of awarding interim benefits to terminated class members until such time as the SSA makes a procedurally correct determination that they are no longer eligible for disability benefits." *Id.* at 740. We reasoned that the interim reinstatement order simply returned the wrongfully terminated claimants to their prior status by reimposing the terms of the only valid "final decision" still on the books ─ namely, the one that had granted the claimants entitlement to benefits in the first instance. We explained that, "[o]nce the District Court properly invalidated the Secretary's termination decisions because of the acknowledged procedural illegality, the Court was clearly entitled to reinstate the earlier favorable final decisions pending lawful redeterminations of each claimant's continuing eligibility." *Id.* Other Circuits have approved reinstatement after a wrongful termination using similar reasoning. *See, e.g.*, *Mental Health Ass'n of Minn. v. Heckler*, 720 F.2d 965, 972 (8th Cir. 1983) (affirming the district court's prospective reinstatement order because

at the agency level that invalidating the overpayment aspect of the SSA's decision necessarily means invalidating the termination aspect of the decision. In that sense, reinstating Adelman's benefits on an interim basis retroactive to the flawed termination decision is collateral to the claim he administratively exhausted, namely, that he had not been overpaid benefits.

[7] Ordinarily, the decision to grant or deny interim reinstatement is reviewed only for abuse of discretion. *State of New York v. Sullivan*, 906 F.2d 910, 918–19 (2d Cir. 1990). Here, however, there is no exercise of discretion to review because the district court did not deny interim reinstatement ─ rather, the court incorrectly found that it could not consider the termination decision at all. Therefore, we are not constrained by that standard of review.

that order "merely reinstates certain plaintiffs to their former position"); *Hayden v. Barnhart*, 374

F.3d 986, 994 (10th Cir. 2004) ("[R]eversal in this case means that the case is simply remanded

to the agency, and that Ms. Hayden, who has already been adjudged to be disabled by the

Commissioner, maintains her disability status and is entitled to payment of any benefits that have

been withheld during the appeals process.").[8]

We recognize that the exhaustion requirement plays a valuable role in the judicial review

of administrative proceedings. As the Supreme Court has explained:

> Exhaustion is generally required as a matter of preventing
> premature interference with agency processes, so that the agency
> may function efficiently and so that it may have an opportunity to
> correct its own errors, to afford the parties and the courts the

---

[8] The power to order interim reinstatement derives from 42 U.S.C. c 405(i) and the court's injunctive power thereunder. *See City of New York*, 742 F.2d at 740 ("The Act authorizes benefit payments following a final decision by the Secretary or a final judgment by a court that a claimant is 'entitled' to benefits . . . the payment of benefits to wrongfully terminated recipients follows a final decision of the Secretary and consequently is consistent with the requirements of section 405(i). . . . [W]here, as here, the award of interim benefits is necessary to make whole individuals harmed by the SSA's failure to abide by the law, federal courts are not without authority to award the necessary relief."). As the Tenth Circuit noted in *Hayden*, this conclusion finds further support in 20 C.F.R. c 404.1597a(i)(6), which provides that if a decision terminating benefits on the ground that a disability has medically ceased is vacated by a federal court, "[c]ontinued benefits are payable to [the claimant] and anyone else receiving benefits based on [the claimant's] wages and self-employment income or because of [the claimant's] disability pending a new decision by the administrative law judge." *See* 374 F.3d at 994. Although this is not a medical cessation case, the same rationale that supports providing interim benefits under c 404.1597a(i)(6) in medical cessation cases supports granting them in cases where the erroneous decision on remand involved an SGA determination: an erroneous finding of medical recovery at one point no more precludes the possibility of a later actual recovery than an erroneous finding of SGA in one time period precludes a later actual ability to perform SGA. In each case, the party that bears the burden in the termination proceeding should bear the risk of error and delay when the reason proffered for termination turns out to be mistaken and the record compiled by the agency does not address possible subsequent developments. Thus, our exercise of the Court's remedial power in this case aligns with the policy evident in c 404.1597a(i)(6) as well.

13

> benefit of its experience and expertise, and to compile a record
> which is adequate for judicial review.

*Weinberger v. Salfi*, 422 U.S. 749, 765 (1975). But none of those purposes justifies sending

Adelman's claims for interim relief back to the beginning of the administrative process under the

present circumstances. Adelman's benefits were terminated, and he was held accountable for the

receipt of allegedly unwarranted benefits, in April 2003, and he promptly challenged that

determination. His family argued throughout a decade of agency proceedings that Adelman's

work in a specialized setting with substantial accommodations did not demonstrate an ability to

perform SGA, and although that position was ultimately vindicated by the district court, the SSA

resisted that outcome at every turn. Assuming Adelman could have filed new applications for

benefits while his lengthy proceedings were pending, each of those applications presumably

would have been premised on the same argument and would have been met with the same

intransigence. We see no benefit in forcing Adelman, a permanently intellectually disabled

person, to now undergo the burden and expense of this Sisyphean process once again simply

because the agency managed to ignore his meritorious argument for the first ten years during

which he made it. *Cf. Liberty All. of the Blind v. Califano*, 568 F.2d 333, 345 (3d Cir. 1977)

(observing "the inutility of exhausting administrative remedies on a legal issue on which the

Secretary has had ample opportunity to take a definitive position, and indeed has done so"),

citing *Salfi*, 422 U.S. at 765.

## II.     Burden on Remand

The Commissioner assumes that if the matter is returned to the SSA for a calculation of

back benefits, Adelman will bear the burden of demonstrating that he was entitled to benefits for

each of the months that they have been withheld beginning in April 2003. As alluded to above,

however, we conclude that the relevant SSA regulation supports Adelman's view as to the burden of proof: that regulation provides that "[i]n most instances, *we* must show that you are able to engage in substantial gainful activity before your benefits are stopped." 20 C.F.R. § 404.1594(b)(5) (emphasis added); *see also id.* c 404.1594(a) ("Even where medical improvement related to your ability to work has occurred or an exception applies, in most cases . . . *we must also show* that you are currently able to engage in substantial gainful activity before we can find that you are no longer disabled." (emphasis added)); *id.* c 404.1594(d) ("If one of these exceptions applies, *we must also show* that, taking all your current impairment(s) into account, not just those that existed at the time of our most recent favorable medical decision, you are now able to engage in substantial gainful activity before your disability can be found to have ended." (emphasis added)); *De Leon v. Sec'y of Health & Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984) (quoting 42 U.S.C. § 425(a) for the proposition that "[t]he Secretary is authorized to terminate a claimant's disability benefits whenever *she obtains* evidence that a claimant's disability has 'ceased'" (emphasis added)). That regulation does not indicate what the exceptions to its rule might be, and the Commissioner has not given us any reason to think that this is one such circumstance.

Instead, the Commissioner's contrary position appears to stem from its erroneous view that Adelman's request for reinstatement is effectively a "reentitlement" claim, pursuant to 20 C.F.R. § 404.1592a. That regulation provides that if a claimant's benefits have ceased due to his performance of SGA during his trial work period, the Commissioner will nevertheless start paying benefits again without requiring a new application if the claimant stops engaging in SGA within a certain period thereafter. But because the SSA has *not* validly determined that Adelman

15

has ever engaged in disqualifying SGA, Adelman does not have a "reentitlement" claim. And the Commissioner has given us no other reason to impose a burden of proof on Adelman to correct the agency's decade-long failure to compile an adequate record.

**CONCLUSION**

In sum, we conclude that Adelman has adequately presented his request for retroactive benefits and reinstatement to the SSA, and that that request for relief is collateral to the issue finally decided by the Appeals Council. To be clear: we do not hold that Adelman has demonstrated an affirmative entitlement to benefits for either the retroactive period or going forward; indeed, we recognize that whether Adelman's work at SUNY constituted SGA after March 2003 is a separate question from whether it was SGA before that date, requiring different evidence and different factual findings. We conclude only that the SSA has failed to carry *its* burden to show that Adelman lacks such entitlement. Accordingly, appropriately calculated retroactive and interim benefits should be awarded unless and until the SSA can demonstrate a valid reason why Adelman's benefits should be terminated.

Thus, for the reasons stated above, the judgment of the district court is **VACATED** insofar as it fails to require reinstatement of Adelman's benefits retroactive to April 2003, and the matter is **REMANDED** for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

16