FILED
United States Court of Appeals
Tenth Circuit

March 21, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

PHILLIP D. HOLBROOK,

        Plaintiff-Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,[*]

        Defendant-Appellee.

No. 12-5101
(D.C. No. 4:10-CV-00755-TLW)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[**]

---

Before **KELLY**, **McKAY**, and **O'BRIEN**, Circuit Judges.

---

Plaintiff Phillip D. Holbrook appeals from an order of the magistrate judge,

upholding the Commissioner's decision denying social security disability and

---

[*]     In accordance with Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant-appellee in this action.

[**]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

supplemental security income benefits.[1]  "We independently review the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence."  *Krauser v. Astrue*, 638 F.3d 1324, 1326 (10th Cir. 2011).  Exercising jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we affirm as explained below.

## AGENCY DECISION

The Administrative Law Judge (ALJ) denied benefits at the last step of the five-step sequence for determining disability.  *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (summarizing five steps).  At step one the ALJ found Holbrook had not engaged in substantial activity since September 5, 2004, the alleged onset date.  At step two he found Holbrook has three severe impairments:  status post pulmonary histoplasmosis, hypertension, and left wrist tendonitis.  He also noted an alleged problem with tinnitus in the left ear, but discounted it as medically non-determinable.  At step three he concluded Holbrook's condition did not meet or equal any of the conclusively disabling impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1.  At step four he found Holbrook had a residual functional capacity (RFC) for light work, "except [for] some residual shortness of breath with weakness in his left wrist and hypertension; therefore, [Holbrook] should not be required to do

---

[1]     As permitted by 28 U.S.C. § 636(c) the parties consented to a final merits decision by this magistrate judge, who was specially designated to exercise such jurisdiction by the district court.

- 2 -

heavy lifting."[2]  App. Vol. 2 at 12.  This RFC precluded any return to past relevant work.  At step five the ALJ decided the Medical-Vocational Guidelines ("grids") in 20 C.F.R. Part 404, Subpart P, Appendix 2 could be used as a framework for decision even though the added limitation on the light RFC precluded summary reliance on them.  Given the minimal effect of the limitation, the ALJ took judicial notice of the numerous sedentary, light, and medium jobs meeting Holbrook's vocational factors,[3] and found on that basis he could perform significant work in the national economy.  Accordingly, the ALJ determined that Holbrook was not disabled.

Holbrook took an administrative appeal challenging the ALJ's decision in several respects.  The Appeals Council denied review, making the ALJ's decision final for purposes of judicial review.

## CHALLENGES TO COMMISSIONER'S DECISION

Holbrook claims (1) the ALJ's analysis at step five erroneously applied the grids and was internally inconsistent, and (2) the ALJ failed to perform a proper credibility analysis.  His briefing is not as focused and direct as the statement of

---

[2]  Given the lesser lifting requirements of light work—and the ALJ specifically found Holbrook could occasionally lift up to 20 pounds and frequently lift up to 10 pounds, *see* 20 C.F.R. §§ 404.1567(b), 416.967(b) (specifying requirements of light work)—a prohibition on heavy lifting may appear superfluous.  In any event, the facially inconsequential nature of this added restriction supports the ALJ's ultimate disposition, as explained later.

[3]  Holbrook objects that the ALJ's obviously inapt reference to medium work was inconsistent with the rest of his findings.  We agree with the magistrate judge that this misstatement was harmless because the ALJ's disposition did not depend on the availability of medium work.  *See* App. Vol. 1 at 43 n.2.

issues suggests, however; it touches on a number of subsidiary or collateral points in the course of discussing the designated assignments of error. We have considered all of the arguments material to our disposition, but we address here only those worthy of explicit discussion.

## A. Step-Five Determination

Holbrook contends the ALJ acknowledged an impairment in his ability to do the full range of light work yet relied on the grid for light work to deny disability without obtaining testimony from a vocational expert (VE) identifying specific light jobs he could still perform. It is true the presence of a material limitation beyond those encompassed within a given RFC precludes summary invocation of a grid rule to dispose of a disability claim. *See, e.g.*, *Allen v. Barnhart*, 357 F.3d 1140, 1143 (10th Cir. 2004). But under certain circumstances a grid rule may still be used to obviate any need for the kind of particularized vocational evidence Holbrook insists was necessary here. As the Commissioner explained in Social Security Ruling (SSR) 83-14:

> The rules will also be used to determine how the totality of limitations or restrictions reduces the occupational base of administratively noticed unskilled sedentary, light, or medium jobs.
>
> A particular additional exertional or nonexertional limitation may have very little effect on the range of work remaining that an individual can perform. The person, therefore, comes very close to meeting a table rule which directs a conclusion of "Not disabled."
>                                    . . . .
>
> In reaching judgments as to the sufficiency of the remaining exertional job base (approximately 2,500 unskilled medium, light, and sedentary

- 4 -

occupations, approximately 1,600 unskilled light and sedentary occupations, and approximately 200 unskilled sedentary occupations), there are three possible situations to consider:

1. *Where it is clear that the additional limitation or restriction has very little effect on the exertional occupational base, the conclusion directed by the appropriate rule in Tables No.1, 2, or 3 would not be affected.*
2. Where it is clear that additional limitations or restrictions have significantly eroded the exertional job base set by the exertional limitations alone, the remaining portion of the job base will guide the decision.
3. Where the adjudicator does not have a clear understanding of the effects of additional limitations on the job base, the services of a [VE] will be necessary.

1983 WL 31254 at *3, *6 (emphasis added). This court has acknowledged the same point in holding a grid rule may be used to obviate the need for vocational evidence "whenever the claimant can perform a *substantial majority* of the work in the designated RFC category." *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995) (emphasis added) (citing cases); *see also Saiz v. Barnhart*, 392 F.3d 397, 400 (10th Cir. 2004) (noting use of grid rule is precluded "if there is 'more than a slight impact on the individual's ability to perform the full range'" of work at that RFC (quoting SSR 96-9p, 1996 WL 374185 at *5 (discussing erosion of sedentary work base)).

With respect to the pertinent additional restrictions here the ALJ concluded they precluded heavy lifting, App. Vol. 2 at 12, but imposed only a minimal limitation on Holbrook's ability to perform basic work activities, *id.* at 15. Moreover, they were not severe enough to prevent his participation in substantial

gainful activity at the designated light RFC, *id.* at 16, which would not significantly exacerbate his symptoms, *id.* Since heavy lifting is not required by light work, *see* supra note 2, there is nothing internally inconsistent about these findings.[4] More to the point, such a restriction would, for the same reason, not significantly erode the job base for light work. Thus the ALJ was not prevented from looking to the grids and concluding the extensive number of administratively noticed jobs for a person with Holbrook's RFC and other vocational factors warranted a determination of nondisability.

Of course, that conclusion assumes the ALJ properly evaluated the evidence in determining the RFC level and associated limitations, which Holbrook disputes. The magistrate judge thoroughly addressed his contentions regarding the evaluation of his wrist impairment and other alleged conditions. App. Vol. 1 at 42-43 (left wrist); *id.* at 44-46 (inability to complete tasks, forgetfulness, dizziness, hearing problem, chronic fatigue, and episodes of coughing). We agree with the magistrate's assessment and see no need to repeat it here. But we augment it in one respect. The ALJ rejected the alleged hearing problem as medically indeterminable, and the magistrate summarized substantial record evidence supporting the ALJ's conclusion.

---

[4]     Holbrook contends it was inconsistent for the ALJ to find impairments to be severe—to significantly limit the ability to perform basic work activities, 20 C.F.R. §§ 404.1520(c), 416.920(c)—and yet conclude they did not significantly reduce his ability to perform light work. But, as the heavy-lifting exclusion here points up, a condition may limit a work-related ability that is simply unimportant at a particular RFC level.

There is, however, one point the magistrate's analysis does not fully engage. Holbrook contends the consultative examiner (CE), whose opinions were accorded substantial weight by the ALJ, "found" he had tinnitus. That term has special significance: laboratory findings and clinical findings (or "signs") establish medically determinable impairments, while a claimant's reported symptoms do not. *See* 20 C.F.R. §§ 404.1528, 404.1529(b), 416.928, and 416.929(b); SSR 96-4p, 1996 WL 374187 at *1. But a finding entails "medically acceptable clinical diagnostic techniques" or "medically acceptable laboratory diagnostic techniques." 20 C.F.R. §§ 404.1528(b), (c), 416.928(b), (c). Neither are in evidence here (the only relevant examination results showed "patent external canals with intact TMs" and "hearing to conversational tone is normal." App. Vol. 3 at 212). Rather, the CE merely noted tinnitus in the course of reciting eye, ear, nose, and throat symptoms reported by Holbrook. *See* App. Vol. 3 at 211. The ALJ was therefore entitled to dismiss the alleged hearing problem as medically indeterminable under the cited regulations.

## B. Credibility Determination

Assessing Holbrook's credibility, the ALJ concluded:

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

App. Vol. 2 at 14. Holbrook contends this conclusion is inadequately supported. But it is.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (citation, brackets, and internal quotation marks omitted). The ALJ cited numerous grounds, tied to the evidence, for his credibility finding.

He discounted the extremity of Holbrook's cardiovascular and pulmonary complaints in light of (1) his discontinuation of medication initially prescribed for hypertension,[5] and the absence of any currently prescribed medication or treatment for hypertension and post status histoplasmosis, (2) his persistence in smoking one to two packs of cigarettes a day despite his alleged complaints; and (3) the conservative approach taken for his shortness of breath following resolution of the acute histoplasmosis episode in 2004. App. Vol. 2 at 15-16. The ALJ discounted

---

[5] Holbrook contends the ALJ could not consider his failure to follow prescribed treatment, absent findings that the treatment would have restored his ability to work and was unjustifiably refused, citing *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987). But, as we explained in *Qualls v. Apfel*, 206 F.3d 1368 (10th Cir. 2000), the *Frey* requirements apply when such noncompliance is cited as a stand-alone basis for denying benefits under 20 C.F.R. §§ 404.1530 and 416.930, not when it is merely part of a credibility assessment. *Qualls*, 206 F.3d at 1372. Of course, noncompliance could lose its force even for the latter purpose if the claimant asserted a plausible justification, but none is asserted here.

Holbrook's physical complaints regarding his left wrist in light of (1) examination results revealing only a slight weakness in the left (non-dominant) hand, with gross and fine dexterity intact, and (2) medical source opinions of its non-severity. *Id.* at 15-16; *see also* App. Vol. 3 at 213, 226, 228, 233. These specific considerations adequately support the credibility determination, and it is not our province to second-guess the weight the ALJ attributed to them.[6]

Holbrook also contends the ALJ's conclusion that his alleged complaints are "not credible to the extent they are inconsistent with the [ALJ's] residual functional capacity assessment" is improper boilerplate. So it would be if that bare conclusion were meant to stand in for the specific findings required for a proper credibility assessment. But, as we have repeatedly explained, use of such conclusory language is "problematic only when it appears 'in the absence of a more thorough analysis,'" not when, as here, "the ALJ's decision referred to specific evidence in support of its

---

[6]    Holbrook objects the ALJ did not expressly discuss his limited daily activities when assessing his credibility. He testified at the hearing that he does "[n]othing really, just sit around the house" and tend to a few dogs. App. Vol. 2 at 29. Actually, the ALJ did refer to this rather vacant testimony earlier in his decision, *see id.* at 13, so he was fully aware of it. In any event, "[o]ur precedent does not require a formalistic factor-by-factor recitation of the evidence so long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility." *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) (internal quotation marks omitted). The ALJ did that here, as discussed above. Given the ALJ's substantiated conclusion that Holbrook was exaggerating in making his case for disability, we are under no uncertainty as to "the weight the ALJ gave to [his] statements [about daily activities] and the reasons for that weight." *Hayden v. Barnhart*, 374 F.3d 986, 992 (10th Cir. 2004) (internal quotation marks omitted). The ALJ's explanation for his credibility determination conformed to the requirements of our precedent.

conclusions." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1170 (10th Cir. 2012) (quoting *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004)).

The judgment of the district court is affirmed.

Entered for the Court


Terrence L. O'Brien
Circuit Judge